UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENIS ALFREDO VELASQUEZ ORELLANA,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ et al.,<br>Respondents. | CASE NO. 2:26-cv-03576-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Denis Alfredo Velasquez Orellana's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons stated below, the Court grants the petition in part and denies it in part.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Honduras who entered the United States without inspection in 2015. Dkt. No. 7 at 2. In 2019, he was arrested and convicted in Denver, Colorado

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

for driving under the influence and sentenced to 15 months of probation. *Id.* On March 18, 2026, U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") "performed DHS system queries that indicated Petitioner had no legal immigration status and was the registered owner of a vehicle in Washington." *Id.* ERO located his vehicle, arrested and detained him, and "served him with a Notice to Appear ('NTA'), charging inadmissibility under [Immigration and Nationality Act] § 212(a)(6)(A)(i) for removal proceedings in Immigration Court." *Id.* ICE then transferred Petitioner to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains detained. *Id.*

ICE did not provide Petitioner with a bond hearing upon his arrest and detention. Dkt. No. 30 at 42. On April 20, 2026, Petitioner filed a petition for a writ of habeas corpus in this District. *Id.* On May 19, 2026, Judge Tiffany M. Cartwright granted Petitioner's habeas petition, finding him to be a member of the bond denial class established in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), and ordering Respondents to provide him with a bond hearing. Dkt. No. 30 at 43–45. On June 9, 2026, Immigration Judge ("IJ") John Odell conducted the court-ordered bond hearing for Petitioner and denied bond, determining that Petitioner had failed to establish that he is not a flight risk. *Id.* Although Petitioner orally waived appeal of the bond denial during the hearing, *see* Dkt. No. 30 at 10, 13–14, he appealed the bond denial to the Board of Immigration Appeals ("BIA") on June 22, 2026, *id.* at 9–11. The BIA received the appeal on July 15, 2026. *Id.* at 7–8. On July 23, 2026, Judge Odell issued a written order supplementing his earlier checkbox denial form. *Id.* at 5–6.

In the meantime, on May 12, 2026, an IJ "denied Petitioner's applications for relief from removal and ordered Petitioner removed to Honduras." Dkt. No. 7 at 2. On May 26, 2026, Petitioner appealed his removal decision to the BIA. Dkt. No. 7 at 2.

On September 22, 2026, Petitioner, represented for the first time by counsel, filed another petition for a writ of habeas corpus. Dkt. No. 1. On September 30, 2026, the BIA dismissed Petitioner's appeal of his removal decision, causing it to become administratively final. Dkt. No. 7 at 2. On October 6, 2026, "ERO served Petitioner with a Notice of Imminent Removal, indicating Petitioner's removal [was] expected to occur in October 2026." *Id.* On October 7, 2026, Respondents[2] filed notice of intent to remove petitioner, Dkt. No. 8, along with a return that indicated that the authority for Petitioner's detention had shifted to 8 U.S.C. § 1231(a) because his removal order was administratively final, Dkt. No. 5 at 3–4. At 4:38 a.m. on October 8, 2026, Petitioner filed a motion for a temporary restraining order ("TRO"), Dkt. No. 9, which the Court denied later that morning because no stay prevented his removal pursuant to his administratively final removal order, Dkt. No. 10. At 12:39 p.m. on October 8, 2026, Petitioner filed a second TRO motion, Dkt. No. 11, which the Court ordered Respondents to respond to by 5:00 p.m. that day, Dkt. No. 13. Respondents did so, Dkt. No. 14, and the Court denied Petitioner's second TRO motion for the same reason that it denied the first, Dkt. No. 15.

On October 13, 2026, Petitioner filed a third TRO motion, indicating that he had appealed the BIA's decision regarding his removal to the Ninth Circuit. Dkt. No. 17. Later that day, Respondents provided notice that Petitioner had been transferred from NWIPC to "a facility in El Paso, Texas." Dkt. No. 19. The next day, the Ninth Circuit received Petitioner's appeal and entered a temporary stay of removal at 3:53 p.m. *Velasquez Orellana v. Blanche*, No. 26-6787, Dkt. No. 5 (9th Cir. Oct. 14, 2026). The Court accordingly denied Petitioner's third TRO motion as moot.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

Dkt. No. 21. Petitioner reports that he has since been returned from Texas to the NWIPC. Dkt. No. 31 at 2.

Respondents requested, and the Court granted, leave to file an amended return to address the changed statutory authority for Petitioner's detention. Dkt. Nos. 22–23. On October 20, 2026, Respondents filed an amended return, a declaration, and an administrative record of Petitioner's bond proceedings; the Court struck the latter two filings because the declaration was not submitted under penalty of perjury[3] and because the administrative record pertained to an individual other than Petitioner. Dkt. Nos. 24–27. Respondents re-filed both documents with corrections the next day, along with a motion for relief from a deadline. Dkt. Nos. 28–30.[4] On October 23, 2026, Petitioner filed an amended traverse. Dkt. No. 31.

## II. DISCUSSION

Petitioner asserts two claims in his petition. First, he claims that the manner of his initial arrest violated his right to procedural due process because the Respondents "arrested him without individualized justification or a warrant." Dkt. No. 1 at 24–25. Second, he claims that his bond hearing violated his right to due process because Judge Odell abused his discretion by finding him a flight risk "without providing sufficient reasoning, without engaging with [his] evidence, and without specifying why no conditions of release would be sufficient to mitigate a risk of flight." *Id.* at 25. He requests immediate release, the return of his personal property, an injunction preventing his re-detention "absent written notice and a hearing prior to re-detention where Respondent[]s must show that he is a danger or a flight risk and that no alternative to detention would mitigate those risks," and leave to seek attorney's fees. *Id.* at 27.

---

[3] Likewise, the declaration at Docket Number 6 was not filed under penalty of perjury, so the Court does not consider it.

[4] The Court grants the motion for relief from deadline and considers the administrative record at Docket Number 30.

Respondents concede that Petitioner's detention is no longer mandatory under 8 U.S.C § 1231 because the Ninth Circuit's stay order has rendered his removal order non-final, and assert instead that Section 1226(a) authorizes his detention. Dkt. No. 24 at 4. They argue that Petitioner has failed to exhaust his bond claim and that his arrest did not violate his right to due process and does not warrant release. *Id.* at 5–9.

**A. Legal Standards**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all

'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Exhaustion Is Not Required**

Judge Cartwright's prior habeas order expressly instructed that, "if the IJ abuses their discretion when applying the law to Petitioner's request for bond, Petitioner may seek relief from that violation in a subsequent habeas petition." Dkt. No. 30 at 44. Nevertheless, Respondents contend that exhaustion is required and Petitioner must wait until his appeal of the bond denial has been resolved by the BIA. Dkt. No. 24 at 6–7. Petitioner contends that exhaustion should not be required because the *Puga* factors weigh in his favor, and he will suffer irreparable harm by being forced to wait for the BIA to resolve his appeal. Dkt. No. 1 at 18–20.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of

administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

Although Petitioner's appeal of the bond denial appears to be underway, the Court exercises its discretion to not require exhaustion because Judge Odell's decision—and the utter lack of rationale justifying that decision, as discussed below—"is so plainly [constitutionally] inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision." *Cruz-Acevedo v. Scott*, No. 2:26-CV-01654-LK, 2026 WL 1623154, at *4 (W.D. Wash. June 5, 2026). And if most IJs begin issuing decisions with similarly deficient reasoning, deliberate bypass of the administrative scheme is the least of the Court's concerns.

Considering the *Puga* factors and the unique facts of this case, prudential exhaustion is not required here. The Court now turns to whether the IJ's decision was an abuse of discretion.

**C. The IJ Abused His Discretion by Denying Bond**

Petitioner claims that Judge Odell abused his discretion because "there is no evidence that [he] considered the *Guerra* factors or applied them to the set of facts he was presented at Mr. Velasquez Orellana['s] bond hearing." Dkt. No. 1 at 21. Respondents do not defend Judge Odell's bond denial decision on the merits. *See generally* Dkt. No. 24.

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee

> prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The allegations in Petitioner's habeas petition—that Judge Odell abused his discretion when he determined that Petitioner was a flight risk—presents a mixed question of fact and law that the Court has jurisdiction to review. *Id.*

Judge Odell's bond denial decision, issued on June 9, 2026, consists of a checkbox form. Dkt. No. 30 at 13–14. It denies Petitioner's bond request because he "has not established that he is not a flight risk." *Id.* at 13. On July 23, 2026, Judge Odell issued a further order, which states in full:

> This court held a bond hearing in Respondent's case on June 9, 2026. The bond hearing was held pursuant to a habeas corpus order issued by a federal district court judge. The district court ordered that Respondent receive a bond hearing under INA section 236(a).
>
> This court denied Respondent's bond request at the hearing held on June 9, 2026, finding that Respondent had not established that he was not a flight risk.
>
> At the conclusion of the bond hearing, Respondent knowingly, voluntarily, intelligently, and unequivocally waived his right to appeal this court's bond decision. This court's contemporaneously issued bond order memorialized Respondent's waiver of appeal. Thus, Respondent's bond decision is now administratively final.
>
> **Order:** Respondent's request for bond is denied. Respondent shall be held without bond.

*Id.* at 5.

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of evidence at his bond hearing, *see Balwan v. Bondi*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *8–9 (W.D. Wash. Feb. 23, 2026), the Court finds that Judge Odell abused his discretion in this case. *See Martinez*, 124 F.4th at 779. The record before the Court is devoid of any indication that Judge Odell considered any of the evidence submitted by Petitioner in

relation to the bond hearing[5] or weighed the relevant *Guerra* factors in making the flight risk determination. Specifically, Judge Odell's orders do not mention the *Guerra* factors, much less consider them, and there is no evidence that Judge Odell explained his reasoning or weighed any factor at the hearing. Due process requires the IJ to set forth his reasoning at the time of the bond hearing. *Garcia-Merino v. Hernandez*, No. 26-CV-1911, 2026 WL 2137819, at *4 (W.D. Wash. July 24, 2026). As noted above, Respondents do not attempt to justify Judge Odell's decision on the merits, nor is it clear they could, as there is simply no record indicating what evidence he relied on or which factors he considered to deny bond.

For these reasons, Judge Odell failed to accord Petitioner the process due to him, abusing his discretion and violating Petitioner's Fifth Amendment rights. *See Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) ("Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." (collecting cases)); *see also, e.g.*, *Avila Garcia v. Scott et al.*, 2:26-cv-02307-BAT, Dkt. No. 9 at 8–9 (W.D. Wash. July 23, 2026) (ordering release when "the IJ failed to provide any rationale for his alternative finding of flight risk and failed to engage whatsoever with the factors weighing for or against such a finding"); *Saparali Uulu v. Scott et al.*, 2:26-cv-01631-TL, Dkt. No. 15 at 18 (W.D. Wash. July 10, 2026) (ordering release because "the IJ abused his discretion when he found, purportedly on the evidence presented to him (none of which [wa]s probative of flight risk), that Petitioner pose[d] a risk of flight"); *Lima Gamez v. Hernandez*, No. 2:26-CV-01104-BAT, 2026 WL 1382362, at *5 (W.D. Wash. May 18, 2026) (ordering release

[5] Petitioner submitted documentation that, among other things, indicates that his 2019 DUI charge was his only criminal history in the country and describes his ties to, and support from, the community. Dkt. No. 30 at 15–39.

when the "record contain[ed] no indication the immigration judge considered any" of the *Guerra* factors); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *10 (C.D. Cal. Mar. 5, 2026) (finding that petitioner's "continued detention fails to comply with his constitutional due process rights" given his "inadequate bond hearing").

**D. Remedy**

Because Petitioner's June 9, 2026 bond hearing was legally and constitutionally inadequate, and because the Court finds no adequate basis for Petitioner's continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser*, 411 U.S. at 484 ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano v. Hernandez*, No. 2:26-cv-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026) (ordering petitioner's immediate release after finding no basis for continued detention); *Miri*, 2026 WL 622302, at *12 (ordering habeas petitioner's immediate release after finding IJ abused discretion in denying petitioner's request for bond).

**E. The Court Otherwise Denies Injunctive Relief**

In addition to immediate release, Petitioner requests that the Court order that "Respondents be permanently enjoined from re-detaining him absent written notice and a hearing prior to re-detention where Respondents must show by clear and convincing evidence that he is a flight risk or a danger to the community and that no alternative to detention would mitigate those risks." Dkt. No. 1 at 23–24.

Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's]

constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman v. Wolf,* 977 F.3d 935, 941–42 (9th Cir. 2020). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Here, Petitioner contends that "ICE detained him once already in violation of his due process rights," and that "it is 'well known in this District that ICE revokes noncitizens' release and detains them without due process.'" *Id.* at 24 (quoting *Rahmani v. Scott*, 2:26-cv-02423-JNW, 2026 WL 2581952, at *5 (W.D. Wash. Sept. 1, 2026)). Even assuming both assertions are true, Petitioner has not claimed that his own re-detention is likely. Without further evidence that an unlawful re-detention is likely to occur, his request constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Cummings*, 316 F.3d at 897 (citation modified); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, his request for a permanent injunction is denied.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Velasquez Orellana's petition for a writ of habeas corpus, Dkt. No. 1, and orders as follows:

1. Respondents shall release Velasquez Orellana from custody within 24 hours under terms consistent with 1226(a);

2. The parties shall file a Joint Status Report by October 29, 2026, confirming that Velasquez Orellana has been released;

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 28th day of October, 2026.

Lauren King
United States District Judge